THEODORE C. CHEN, CSBN 206647
LAW OFFICES OF FARSHAD OWJI, P.A.
473 Jackson Street, Second Floor
San Francisco, California 94111
Telephone:    (415) 693-9583
Facsimile:    (415) 693-9584

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MEHDI YAHYANEJAD,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>PETER D. KEISLER, Acting Attorney General of the United States in his Official Capacity; ROBERT S. MUELLER, Director of FBI in his Official Capacity; MICHAEL CHERTOFF, Secretary of the Department of Homeland Security, in his Official Capacity; EMILIO T. GONZALEZ, Director of the United States Citizenship and Immigration Services, in his Official Capacity; ROSEMARY MELVILLE, District Director of the San Francisco Citizenship and Immigration Service office in her official capacity; FRANCIS D. SICILIANO, Director of San Jose Field Office, in his official capacity.<br><br>　　　　　Defendants. | Case No.: **C07-3867 RS**<br><br>**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Date: November 14, 2007<br>Time: 9:30 a.m.<br>Courtroom: 4, 5th Floor |

## I. INTRODUCTION

Plaintiff MEHDI YAHYANEJAD hereby submits his opposition to Defendants' motion for an order dismissing the complaint pursuant to Fed. R. Civ. P. 12(b)(1). Defendants'

---

C07-3867 RS　　　　　　　　　　　　　　　1

motion is based on grounds that Defendants PETER D. KEISLER, Acting Attorney General of the United States, in his Official Capacity as head of the Department of Justice, and ROBERT S. MUELLER, in his Official Capacity as Director of the Federal Bureau of Investigation ("FBI"), do not have authority to process immigration applications.

Plaintiff's mandamus action is before this Court pursuant to the Mandamus Act, codified under 28 U.S.C. § 1361 and the Administrative Procedures Act, codified under 5 U.S.C. § 702. On February 25, 2005, the Plaintiff filed an adjustment of status application with the Department of Homeland Security, U.S. Citizenship and Immigration Services, San Jose Sub-Office. He and his U.S. citizen spouse were thereafter interviewed on May 25, 2005. Plaintiff was thereafter informed by the USCIS that his application for adjustment of status to a lawful permanent resident could not be approved because the FBI name check had not been completed in his case. The FBI name check remains pending to this date.

## II.  ARGUMENT

### A.  Court has Mandamus and APA Jurisdiction over Plaintiff's Case

#### 1.  Mandamus Jurisdiction

28 U.S.C. § 1361 provides, that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." *28 U.S.C. § 1361*. "The common-law writ of mandamus, as codified in 28 U.S.C. § 1361 is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Heckler v. Ringer, 466 U.S. 602, 616.* "A writ of mandamus is appropriately issued only when (1) the plaintiff's claim is 'clear and certain'; (2) the defendant official's duty to act is ministerial, and 'so plainly prescribed as to be free from doubt'; and (3) no other adequate remedy is available." *Barron v. Reich, 13 F.3d 1370, 1374 (9th Cir. 1994)*

#### 2.  APA Jurisdiction

"The Administrative Procedures Act (APA) authorizes suit by '[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action

within the meaning of a relevant statute.'" *Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55, 61 (2004)*; 5 U.S.C. § 702. "'[A]gency action' is defined . . . to include 'the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, *or failure to act.*'" *Norton, 542 U.S. at 62* (emphasis in original). When an agency fails to act, the APA provides relief in the form of empowering a court to compel agency action unlawfully withheld or unreasonably delayed. Id. The APA provides relief for a failure to act insofar as it empowers a district court to compel an agency to perform a ministerial or non-discretionary act, or to act on a matter without directing it how to act, so long as the plaintiff has asserted a discrete agency action that it is required to take, if the agency unlawfully withheld or unreasonably delayed in acting on a duty. *Norton, 542 U.S. at 63-65*; see 5 U.S.C. § 555(b)

### B. Defendants have a Non-Discretionary Duty to Adjudicate Plaintiff's Adjustment of Status Application

The Immigration and Nationality Act ("INA") authorizes "the Attorney General, in his discretion," to adjust to permanent residence status certain aliens who have been admitted into the United States. *8 U.S.C. § 1255(a)*. However, as the government has conceded in at least two similar actions, see *Singh v. Still, 470 F.Supp.2d 1064, 1067 (N.D. Cal. 2007)* and *Gelfer v. Chertoff*, 2007 WL 902382, *2 (N.D. Cal. 2007), while its duty to grant an adjusted status is discretionary, its duty to *process* I-485 applications under *§ 1255* is non-discretionary. See *Aboushaban v. Mueller*, 2006 WL 3041086, *2 (N.D. Cal. 2006) (holding that the duty to adjudicate a plaintiff's I-485 application is non-discretionary).

As such, the Court has subject matter jurisdiction to consider whether the Defendants have unreasonably delayed in performing their non-discretionary duty to adjudicate Plaintiff's I-485 application. See *Wu v.Chertoff*, et al., 2007 WL 1223858, *3 (N.D. Cal. 2007) (holding that a clear and certain right exists to have an immigration status adjustment application adjudicated in a reasonable time frame); *Singh, 470 F. Supp. 2d at 1067* (plaintiffs seeking adjustment of their legal status have a right, enforceable through a writ of mandamus, to have their applications processed within a reasonable time"); *Gelfer*, 2007 WL 902382 at *2 (the government has a statutorily prescribed duty to adjudicate a petitioner's immigration status

adjustment application 'within a reasonable time' under *5 U.S.C. § 555(b)*)

Accordingly, the Defendants acting in their respective official capacities with the Department of the Homeland Security and the U.S. Citizenship and Immigration Services have a non-discretionary duty to adjudicate the plaintiff's application for adjustment of status.

### C. By entering into a Fee-for-Service Contract with the USCIS/DHS for Performance of Name Checks in Immigration Applications, the FBI, a Sub-Agency of the U.S. Department of Justice, has Relinquished any Discretionary Duties relating to Immigration Applications.

According to the USCIS Ombudsman's 2007 Annual Report to Congress, the FBI name checks relating to immigration applications "are not conducted by the FBI as part of ongoing investigations or from a need to learn more about an individual because of any threat or risk perceived by the FBI. Instead, the name checks are a fee-for-service that the FBI provides to USCIS and according to USCIS-defined standards." See *USCIS Ombudsman Annual Report 2007* (June 11, 2007) at p. 38.[1]

Plaintiff respectfully submits that, by entering into a fee-for-service contract for the performance of FBI name checks on behalf of the DHS and USCIS—government agencies who clearly have a non-discretionary duty to adjudicate properly-filed immigration applications--defendants Peter D. Kiesler and Robert S. Mueller, in their respective official capacities as heads of the U.S. Department of Justice and its sub-agency, the FBI, have for all intents and purposes relinquished any discretionary duties they may have had with respect to the performance of name checks in immigration applications.

At the very least, because the FBI name check appears to be the sole issue in the underlying delay of the plaintiff's immigration case, the Court should retain jurisdiction over the FBI so that the Defendants' attorney—the United States Attorney's Office for the Northern District of California—maintains a client it may engage in settlement of this action.

---

[1] A copy of relevant excerpts of the USCIS Ombudsman's Annual Report to Congress, June 11, 2007, is hereby attached for the court's reference.

C07-3867 RS                4

| | |
|---|---|
| Dated: October 23, 2007 | Respectfully Submitted, |
| | /s/ |
| | ———————————— |
| | THEODORE C. CHEN |
| | Attorney for Plaintiff |



# Citizenship and Immigration Services Ombudsman

# Annual Report 2007

Submitted to:

United States Senate
Committee on the Judiciary

United States House of Representatives
Committee on the Judiciary

June 11, 2007



## MESSAGE FROM THE OMBUDSMAN



The Citizenship and Immigration Services Ombudsman's 2007 Annual Report marks 46 months of cumulative analysis and recommendations since the establishment of the office. The Ombudsman's office is Congressionally-mandated to assist individuals and employers in resolving problems with the U.S. Citizenship and Immigration Services (USCIS) of the Department of Homeland Security (DHS) by advancing recommendations on improving USCIS services and operations. It is an independent DHS office that reports directly to the DHS Deputy Secretary with an annual report to Congress without prior review and comment by DHS or the executive branch, as directed by the Homeland Security Act of 2002.

The Ombudsman's first three annual reports focused on the systemic issues that caused delay in granting immigration benefits and customer service complaints. These reports identified pervasive and serious issues that were addressed in 28 formal recommendations directed at solving problems faced by individuals and employers in their interactions with USCIS. The USCIS Director and the Ombudsman generally agree on the identified problems and their need for priority attention, although the solutions proposed and those adopted by USCIS may differ.

Challenges still exist within USCIS. Customers continue to have difficulties with confusing forms and processes and many customers wait months, and perhaps years, for final adjudication of their cases. The Ombudsman will continue to assist individuals to receive lawful benefits in a timely, customer-friendly, secure, and efficient manner.

I want to thank DHS Secretary Michael Chertoff, Deputy Secretary Michael P. Jackson, former Secretary Tom Ridge, former Deputy Secretary Jim Loy, former Deputy Secretary Gordon England, USCIS Director Emilio Gonzalez, Deputy Director Jonathan "Jock" Scharfen, and former Director Eduardo Aguirre for their dedication to our mission of providing secure, efficient, and expeditious immigration services. I have been privileged to work with committed professionals in DHS, USCIS, and the Ombudsman's office.

The preparation of this annual report was accomplished by tireless efforts of a dedicated staff of professionals who spent many hundreds of hours reviewing and validating facts and figures, as well as drafting and editing the report. I thank them for assisting me in completing it and for their public service in addressing national security and customer service. I especially would like to thank Wendy Kamenshine who again this year skillfully managed this complicated project.

We have accomplished a great deal, but there is much more to do in the spirit of responsive government.

*Prakash Khatri*

Prakash Khatri
Citizenship & Immigration Services Ombudsman

# Table of Contents

Message From The Ombudsman .................................................................................................. ii

Executive Summary ..................................................................................................................... iii

I. Introduction ........................................................................................................................1

    A. Mission ...................................................................................................................1

    B. State of USCIS .......................................................................................................2

        1. USCIS Budget and Funding ........................................................................2

        2. Testing and Implementation of Innovative Approaches to Benefits Processing ...................................................................................................3

        3. Transparency in Adjudications Processing .................................................3

        4. USCIS Relationship with the Ombudsman .................................................3

    C. Accomplishments ...................................................................................................4

II. USCIS Transformation .......................................................................................................5

III. Pervasive and Serious Problems .........................................................................................7

    A. Complexity of the Immigration Process ................................................................7

        1. Background .................................................................................................7

        2. USCIS Accountability ................................................................................8

        3. Filing Requirements and Processes ............................................................9

    B. Backlogs and Pending Cases ................................................................................11

        1. Backlog Definition and Data ....................................................................11

        2. Adjudications of Backlogged Cases .........................................................14

        3. Backlogged Form I-130 Petitions for Foreign National Relatives ...........15

    C. Processing Times ..................................................................................................17

    D. Customer Service ..................................................................................................21

        1. INFOPASS ................................................................................................23

        2. National Customer Service Center ............................................................25

        3. Case Status Online ....................................................................................30

| | | |
|---|---|---|
| E. | Untimely Processing and Systemic Problems with Employment-Based Green Card Applications | 32 |
| | 1. Background | 32 |
| | 2. Employment-Based Green Card Data Tracking and Ombudsman as Interdepartmental Liaison | 35 |
| | 3. Possible Solutions to Problems with Employment-Based Green Card Processing | 36 |
| F. | Name Checks and Other Security Checks | 37 |
| | 1. Background | 37 |
| | 2. Impact of Long-Pending FBI Name Checks on USCIS Customers | 39 |
| | 3. Value of the FBI Name Checks | 40 |
| | 4. Possible Solutions to the FBI Name Check Delays | 41 |
| G. | Interim Benefits | 45 |
| | 1. Background | 45 |
| | 2. Thousands of Ineligible Green Card Applicants Continue to Receive EADs | 46 |
| H. | Funding of USCIS | 46 |
| | 1. USCIS Sets New Fees for Petitions and Applications | 47 |
| | 2. Premium Processing | 49 |
| | 3. The Ombudsman Urges Consideration of a Revolving Trust to Fund USCIS | 51 |
| I. | Lack of Standardization Across USCIS Business Processes | 51 |
| J. | Inefficient or Redundant Processes | 54 |
| | 1. Need for Improved Form Instructions and USCIS Intake Processes | 55 |
| | 2. Multiple Filings for Foreign Spouses of U.S. Citizens | 56 |
| | 3. Application Support Centers and Fingerprinting of Applicants | 57 |
| | 4. Initial Case Screening and Widespread Issuance of Requests for Additional Evidence | 58 |
| K. | Coordination and Communication | 61 |
| | 1. Field Offices/Service Centers | 61 |
| | 2. USCIS Headquarters/Field Office Coordination | 62 |

were approved. This process would ensure that USCIS does not accept more applications than the number of visas available.

Another issue with priority dates and workloads is connected to the new fee rule. The Ombudsman anticipates that when the new fee rule goes into effect in July, delays in adjudication will significantly impact the agency if it does not track visa information, including visa classifications, priority dates, and country of chargeability. Without tallying cases receipted by visa category, USCIS inevitably will accept ineligible applications and more applications than it can process in the given timeframe. The agency will not collect fees for interim benefits issued for new green card applicants, as the new fee rule requires only one payment for both. In addition, there may be large numbers of retrogressed cases and, eventually, multiple issuances of interim benefits.

As described in the Ombudsman's 2006 Annual Report (at pp. 13-16), the Ombudsman continues to be concerned about USCIS' data integrity and failure to meet its obligation to maintain an accurate count of pending employment- and family-based preference applications. Although the focus is on employment-based visa applications, similar concerns exist for family-based preference cases. The continued collaboration of these agencies supports the Ombudsman's vision of cooperation to provide benefits in a timely and efficient manner.

### F. Name Checks and Other Security Checks

FBI name checks, one of several security screening tools used by USCIS, continue to significantly delay adjudication of immigration benefits for many customers, hinder backlog reductions efforts, and may not achieve their intended national security objectives. FBI name checks may be the single biggest obstacle to the timely and efficient delivery of immigration benefits. The problem of long-pending FBI name check cases <u>worsened</u> during the reporting period.

#### 1. Background

As of May 2007, USCIS reported a staggering 329,160 FBI name check cases pending, with approximately 64 percent (211,341) of those cases pending more than 90 days and approximately 32 percent (106,738) pending more than one year.[40] While the percentages of long-pending cases compared to last year are similar, the absolute numbers have increased. There are now 93,358 more cases pending the name check than last year. Perhaps most disturbing, there are 31,144 FBI name check cases pending more than 33 months as compared to 21,570 last year – over a 44 percent increase in the number of cases pending more than 33 months.[41]

---

[40] *See* USCIS FBI Pending Name Check Aging Report (May 4, 2007). It is important to note that USCIS does not include within its backlog cases pending due to FBI name checks. There are 155,592 FBI name check cases pending more than six months that otherwise may be part of USCIS' backlog. See section III.B for a discussion of USCIS backlogs.

[41] *See id.*

Figure 10: Pending FBI Name Checks

| Age of Pending Response | Total Count (May 4, 2007) | Total Count (May 17, 2006) |
|---|---:|---:|
| < 3 months | 117,819 | 82,636 |
| 3 - 6 months | 55,749 | 33,450 |
| 6 - 9 months | 28,029 | 20,047 |
| 9 - 12 months | 20,825 | 16,845 |
| 12 - 15 months | 14,133 | 15,064 |
| 15 - 18 months | 13,931 | 10,636 |
| 18 - 21 months | 11,035 | 8,144 |
| 21 - 24 months | 12,398 | 8,325 |
| 24 - 27 months | 11,765 | 9,754 |
| 27 - 30 months | 6,600 | 4,435 |
| 30 - 33 months | 5,732 | 4,896 |
| > 33 months | 31,144 | 21,570 |
| **Total Pending** | **329,160** | **235,802** |

During the reporting period, processing delays due to FBI name checks were an issue in approximately 25 percent of all written case problems received by the Ombudsman. Resolving the FBI name check issue is included in the Ombudsman's top five priorities posted on the office website.[42] Unlike FBI name checks, other types of background and security checks – *e.g.*, fingerprint checks, the Interagency Border Inspection Systems name checks (IBIS), and the Automated Biometric Identification System (IDENT) checks – return results within a few days, if not a few minutes. These law enforcement and watch list checks do not significantly prolong USCIS processing times or contribute to the USCIS backlog.

As described in the Ombudsman's 2006 Annual Report (at p. 24), the FBI provides information to USCIS regarding anyone who is the principal subject of an investigation or is a person referenced in a file. USCIS adjudicators and the Fraud Detection and National Security (FDNS) unit use this information to determine if applicants are ineligible for benefits. The FBI provides the name check results at USCIS' request. Name checks are not conducted by the FBI as part of ongoing investigations or from a need to learn more about an individual because of any threat or risk perceived by the FBI. Instead, the name checks are a fee-for-service that the FBI provides to USCIS and according to USCIS-defined standards.

Once USCIS forwards records to the FBI for name checks, the process and the turnaround time for the checks are outside of USCIS' control. Completion of the name check process may take considerable time because manual reviews of FBI files are sometimes required. This review may include FBI reporting on fragments of names of people who are not necessarily central or directly related to an investigation or law enforcement matter. In discussions with the

---

[42] *See* section VI.F.

Ombudsman, the FBI has stated that it lacks the resources to perform the function in a timely manner.

### 2. Impact of Long-Pending FBI Name Checks on USCIS Customers

The delay caused by the FBI name check has substantial consequences to applicants and their families, as well as to our country and the economy. Examples of how legitimate applicants suffer include:

- Loss of employment and employment opportunities where the position requires green card status or U.S. citizenship;

- Possible termination of employment due to the inability to comply with required Form I-9 employment verification procedures where USCIS delays interim EAD issuance;

- Difficulties obtaining drivers' licenses;

- Inability to qualify for certain federal grants and funds;

- Limitations on the ability to purchase property;

- Difficulties obtaining credit and student loans; and

- Disqualification from in-state tuition.

---

**CASE PROBLEM**

*The applicant's green card application has been pending since early 2005 due to the FBI name check. The applicant is a valued researcher at a U.S. pharmaceutical company.*

---

**CASE PROBLEM**

*The applicant's green card application has been pending with USCIS for approximately four years due to the FBI name check. The applicant is a researcher at a U.S. university and, because of the adjudication delay, the university and the individual have been disadvantaged in seeking grant proposals and funding. Specifically, the individual reports that he is currently working on federal research projects. The applicant's inability to advance critical work for the project is a serious impediment to the university, its competitiveness, and the applicant's professional advancement.*

---