THEODORE C. CHEN, CSBN 206647
LAW OFFICES OF FARSHAD OWJI, P.A.
473 Jackson Street, Second Floor
San Francisco, California 94111
Telephone:   (415) 693-9583
Facsimile:   (415) 693-9584

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MEHDI YAHYANEJAD,<br><br>                     Plaintiff,<br><br>         v.<br><br>PETER D. KEISLER, Acting Attorney General of the United States in his Official Capacity; ROBERT S. MUELLER, Director of FBI in his Official Capacity;  MICHAEL CHERTOFF, Secretary of the Department of Homeland Security, in his Official Capacity; EMILIO T. GONZALEZ, Director of the United States Citizenship and Immigration Services, in his Official Capacity; ROSEMARY MELVILLE, District Director of the San Francisco Citizenship and Immigration Service office in her official capacity;  FRANCIS D. SICILIANO, Director of San Jose Field Office, in his official capacity.<br><br>                     Defendants. | Case No.:  **C07-3867 RS**<br><br>**SUPPLEMENT TO MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>**No Oral Argument by Stipulation and Court Order** |

While Defendants ostensibly concede in their motion to dismiss that Defendants Chertoff, Gonzalez and Melville of the Department of Homeland Security and the USCIS have primary responsibility over adjudication of Plaintiff's application for adjustment of status,

**C07-3867 RS**                                          1

they also seek dismissal of Defendants Peter Keisler and Robert Mueller, in their official capacities on behalf of the U.S. Department of Justice and the Federal Bureau of Investigation (FBI), arguing that the Attorney General and FBI possess neither a statutory nor non-discretionary duty to conduct security, background and/or name checks of alien applicants for visas, immigration benefits and admission to the United States (including adjustment of status).

While Plaintiff would concede that the FBI's involvement in the actual adjudication of adjustment of status applications is ancillary and confined to the performance of background checks for the USCIS—duties or functions partly arising by contract with the DHS and USCIS—it is respectfully submitted that it would be premature to dismiss these defendants at this time, given that the delay in the adjudication of the Plaintiff's application for adjustment of status is due solely to the pending FBI name check. Moreover, as hereafter set forth, the FBI's contractual obligation to perform the name check for the DHS and USCIS is assumed pursuant to both statutory and executive mandate.

The Administrative Procedures Act (APA) authorizes suit by a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 61 (2004); 5 U.S.C. § 702  Agency action is defined to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, *or failure to act.*" *Norton,* 542 U.S. at 62 (emphasis in original)  A "failure to act" must be limited to a discrete agency action that is legally required. *Id.*  Where these elements are met, a Court may compel the agency to perform an action "unlawfully withheld" or "unreasonably delayed" 5 U.S.C. §706(1).

On May 14, 2002, the President signed into law H.R. 3525, otherwise known as the *Enhanced Border Security and Visa Entry Reform Act of 2002*. See Pub. L. 107-173  Among the many provisions aimed at protecting the United States from further terrorist attacks were various directives to the President and other executive agencies to establish more stringent protocols for the screening and tracking of all visa and admission applicants to the United

**C07-3867 RS**                                             2

States. In addition to requiring machine-readable passports, pre-flight provision of passenger manifests, and development of systems to track foreign students and exchange visitors present in the United States, this law required the development of information-sharing capabilities between law enforcement agencies and those agencies directly involved in visa issuance (State Department) adjudication of immigration benefits, and immigration customs and border enforcement and protection (functions then collectively performed by the INS, now by the DHS).

Under Section 201(c) of the *Enhanced Border Security and Visa Entry Reform Act* of 2002, Congress required the establishment of the following interim measures for access to and coordination of law enforcement and other information for homeland and border security agencies:

> a. Requires law enforcement and intelligence agencies to make a maximum effort to share information relevant to admissibility and deportability of aliens with State and USCIS pending development of a comprehensive data share plan required by this act.
>
> b. Requires, no later than September 11, 2002, that the President identify to the Congress the information required from the law enforcement and intelligence communities for use by State and USCIS to screen applicants for admission.
>
> c. Requires within one year of passage the development and implementation of a plan for Federal law enforcement agencies and the intelligence community to provide the Department and the USCIS with such information. The plan must have adequate safeguards for the security of the information and for the protection of the confidentiality of informants.

Pub. L. 107-173

Section 202(b)(3) of the *Enhanced Border Security and Visa Entry Reform Act of 2002* further required that the "Secretary of State and the Attorney General shall jointly prescribe procedures to ensure that consular and immigration officers can, as required, obtain assistance in resolving identity and other questions that may arise about the names of aliens seeking visas or admission to the United States that may be subject to variations in format, transliteration, or other similar phenomenon." Id.

**C07-3867 RS** 3

Thus, under the *Enhanced Border Security and Visa Entry Reform Act of 2002*, establishment of a "name check" protocol was statutorily mandated as a law enforcement function r**equired** of the Attorney General in performance of his duty to facilitate the collection and sharing of law enforcement information and other data with the Department of State and the USCIS specifically in performance of their functions of adjudicating all visa and other immigration applications by foreign nationals and non-citizens seeking entry, admission, lawful permanent residence, or citizenship in the United States.  The Attorney General, has in turn, delegated the **discrete** name check function for visa and immigration applications to the FBI.[1]

Accordingly, while the Attorney General's duty to establish name check protocols, procedures, and information-sharing systems may concededly not be clear and discrete actions under the Enhanced Border Security and Visa Entry Reform Act of 2002, the FBI's duty to perform the discrete name check function is clearly non-discretionary and ministerial.

Defendants, in this and similar actions, repeatedly emphasize the "national security" significance of the FBI name checks, even as they seek to absolve the Attorney General and the FBI of any non-discretionary duty to perform these name checks for USCIS in adjudicating the Plaintiff's application for adjustment of status.

Defendants Chertoff and agency officials of the USCIS, on the other hand, would justify the multi-year delay in the adjudication of the plaintiff's application for permanent residence by disclaiming any ability to control the time required for the name check procedure performed by the FBI.

---

[1] The FBI's National Name Check Program (NNCP) has its genesis in Executive Order 10450, issued during the Eisenhower Administration, addressing federal personnel security issues, and mandated National Agency Checks (NACs) as part of the pre-employment vetting and background investigation process.  Since the passage of Enhanced Border Security and Visa Entry Reform Act in 2002 and other implementing regulations by various executive agencies, the FBI's name check function falls under various sub-divisions within the FBI's National Security Branch.

**C07-3867 RS**    4

Accordingly, Plaintiff respectfully submits that it is unclear whether this Court should prematurely relinquish jurisdiction over the Attorney General and the FBI, given the duties imposed by the *Enhanced Border Security and Visa Entry Reform Act of 2002* on the applicable law enforcement agencies to perform security and name checks for visa and immigration applications adjudicated by the Department of State and the Department of Homeland Security.

Dated: November 2, 2007                                  Respectfully Submitted,


                                                                                       /s/
                                                         _____
                                                         THEODORE C. CHEN
                                                         Attorney for Plaintiff